## CITTADINO *v.* STATE.

(In Banc.   Dec. 10, 1945.   Suggestion of Error Overruled Jan. 14, 1946.)

[24 So. (2d) 93.   No. 35972.]

Jeff Collins, of Laurel, and **Forrest B. Jackson**, of Jackson, for appellant.

**Greek L. Rice,** Attorney General, by **Geo. H. Ethridge,** Assistant Attorney General, for appellee.

Argued orally by **Forrest B. Jackson** and **Jeff Collins**, for appellant, and by **Geo. H. Ethridge**, for appellee.

**Alexander, J.**, delivered the opinion of the court.

Appellant was convicted of robbery with firearms and the judgment, in accord with the verdict of the jury, carried the death penalty. The assignments of error pressed as grounds for reversal are the following: (1) failure properly to identify appellant as a participant in the crime; (2) denial of motions for mistrial on ground of prejudicial rulings; and (3) errors in instructions and sentence which assumed that the firearm exhibited was a deadly weapon.

Appellant was jointly indicted with Walter Henderson and Steve Dindinger under Section 2367 of the Code of 1942, which is as follows:

"Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, shall be punished by death if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penal-

ty at death, the court shall fix the penalty at imprisonment in the penitentiary for any term not less than three years.

"The passage of this Act shall not be held to repeal any existing criminal statute of the state."

A severance was granted and upon arrignment the joint defendants pleaded guilty, the appellant alone standing trial. The testimony for the state is that the three defendants came to the home of Ernest Bishop near the town of Moselle, and after having made a survey of the premises through the device of repeated inquiries for tools to repair an allegedly disabled car they held up the occupants of the home at pistol point and robbed Bishop of some $11,000, and thereupon securely bound all those present.

The jury were amply justified in finding that appellant was one of the marauding trio. He was positively identified by Bishop and two other occupants of the house who for a period of about an hour had an opportunity to observe the intruders. Further identification was aided by the testimony of five other nearby residents who saw and talked with appellant the day following the robbery and who, by his manner of dress and mode of travel, were able to identify him as being present in the neighborhood of the crime. Appellant had on his person a substantial amount of money, paid liberally for assistance rendered him in repair of his car, and offered $100 for transportation to a nearby town. Louisiana officers showed appellant's presence at Independence, Louisiana, in company with the codefendants on the preceding day, and shortly after the robbery found money and guns on appellant's person and in his home which Bishop identified as having been taken from him. The presence of the three men together at Independence was corroborated by Dindinger who in his testimony admitted his guilt but exonerated appellant from participation. We find no basis for denying to the jury the right to find appellant guilty upon the facts shown.

The next assignment of error concerns the following trial incident. At the conclusion of the state's case ap-

pellant moved the trial court to exclude certain objective evidence including guns and bills found upon the person or in the home of appellant, and some clothing which had been found in a suitcase in the rear of the home and place of business of appellant's mother, next door to his own home. This clothing was identified by several of the witnesses as the same as, or at least similar to, that worn by the appellant at the time of the robbery and on the day following. In sustaining the motion to exclude the testimony the trial judge stated to the jury: "All the testimony that has been introduced here about guns, pistols, etc., that nobody can identify positively, is excluded. You won't consider that on the trial of this case. The only testimony you will consider in this case about property, is the greenback, the dollar bills and the greenback that have been identified here positively, that is, that the State has identified positively as the property of Mr. Bishop. The other is excluded from your consideration, and you won't consider it."

The Court denied motion for mistrial based on alleged prejudice resulting from what is asserted to be commentary upon the weight of the evidence by the court in violation of Section 1530, Code 1942. The point of attack is the statement "that the State has identified positively as the property of Mr. Bishop." The generality of the language makes it less vulnerable to attack. It is true that the Court referred to "the dollar bills and the greenback" as having been "identified here positively" and later stated "I ruled out everything, Mr. Collins, except these bills that have been identified by both Mr. Bishop and other witnesses." Yet the jury were left to consider such as they found to have met the test of identification. Moreover, we have carefully examined the testimony upon which the offer of the money, the guns, and the clothing was sought and are of the opinion that the exclusion of these was more favorable to the defendant than he had a right to expect. Two of the guns and certain of the bills bearing special markings were "positively identified" by Bishop as those taken from him,

and by the arresting officers as those retrieved from the defendant. The clothing discarded and found upon premises adjacent to defendant's home and identified by numerous witnesses as at least identical to that worn by defendant and was of such circumstantial value as the jury might have appraised. Moreover, the other objects were in fact "positively identified" as the property of Bishop whose testimony was not contradicted but corroborated. These objects were excluded as exhibits and thereby the Court intimated doubt as to their identity in fact, so that the contention now concerns only the residual prejudice arising from their exhibition to the witnesses. We find no prejudicial error in the phrasing by the Court of its ruling made in support of defendant's motion.

Mistrial was also moved upon the ground that one of the arresting officers stated on direct examination, "Well, to start off with we already had them under investigation before this—" whereupon the prosecutor interposed "Now you say you already had them under investigation?" Objection thereto was promptly sustained but motion for mistrial was made and overruled. We find no reversible error here. The fact of an investigation is not an unnatural inference from the fact of the arrest which followed even as the indictment and trial presupposed, and the conviction vindicated, prior examination and suspicion. Appellant's counsel made numerous inquiries of the officers regarding their "investigation." There is not clearly implied a reference to any offense other than that here tried and the arrest to which the investigation led.

The last assignments involve the alleged failure of the state to prove that the robbery was committed "by the exhibition of a deadly weapon." The point is saved in the action of the Court in granting instructions for the state which authorized conviction under the statute by a finding that the firearms used were deadly weapons, and in the court's action in fixing sentence at death in ac-

cordance with the jury's verdict of guilty as charged whereby the extreme penalty was by them so fixed.

The testimony showed that each of the three robbers were armed with drawn "guns" or pistols and that the victims were thereby compelled to submit to surrender of their goods and to personal bondage in accordance with the crude and cruel usages of this despicable guild. The argument is that there was no proof that the pistols were loaded nor was their use as bludgeons attempted or threatened.

A pistol has, under our statutes denouncing the exhibition or carrying of such weapons, been judicially declared to be a "deadly weapon" without proof that it is loaded or presently capable of committing a violent injury. Gamblin v. State, 45 Miss. 658; Mitchell v. State, 99 Miss. 579, 55 So. 354, 34 L. R. A. (N. S.) 1174, Ann. Cas. 1913E, 512; State v. Bollis, 73 Miss. 57, 19 So. 99.

Section 2362, Code 1942, is an evolutionary development from the concept of simple assault which is an infringement upon the right to a sense of personal security and is defined subjectively in terms of a reasonable apprehension engendered in the victim by hostile threat or gesture. Prosser, Torts, Sec. 48; 2 Rest., Torts, Secs. 21, 33; 4 Am. Jur., Assault and Battery, Sec. 6; 6 C. J. S., Assault and Battery, Sec. 63. See also Blankenship v. State, 130 Miss. 725, 95 So. 81.

Our robbery statute (Section 2362) follows the common-law definition and the offense may be committed when personal property of another is taken from him or in his presence "by putting such person in fear of immediate injury to his person." The means used is important only to the extent that it reasonably instills a disabling apprehension of great personal injury. Section 2367 under which appellant was convicted, is merely an extension of Section 2362 and adds that when the taking is accomplished "by the exhibition of a deadly weapon" conviction may carry the death penalty. The evil sought to be abated was the employment of such weapons as are held generally, and therefore by the victim, to be deadly. We

do not have a case where the weapon has been shown not to be deadly because not loaded or otherwise incapable of use as a firearm. Nor do we treat of the manner of its use since it was not used to effect a battery but accomplished its purpose by its challenge that the actor was ready, able and quite willing to make it deadly. The limited option, made proverbial by the techniques of a ruthless banditry, of money or life is a representation by the culprit that the weapon is deadly and that he will kill because he can kill. This representation, whether voiced or not, is what the bandit expects or insists that the victim comprehend and so accept as literally true, whereby he is immobilized by a reasonable fear. This is the substance from which a genuine inference of the deadly character of the weapon may be formed. In Jones v. Commonwealth, 172 Va. 615, 1 S.E. (2d) 300, 302, cited by appellant, the court held in a similar case that the truth that "actions speak louder than words" is an acceptable canon of the law. Both common sense and common knowledge contribute their bit to the reasonableness of the victim's assumption and to the judicial recognition of the impracticability of any theory except that proof of the threatening exhibition of a weapon which may be deadly if used is prima facie evidence that it can and will be so used. To contend that the state must show that the gun could and the actor would carry out his threat would put upon the victim the further option of compelling his assailant to demonstrate the deadly nature of his weapon by a preliminary or practice shot,—in which event the brigand may elect to exploit the victim as a target—or to borrow or wrest the weapon from his attacker and satisfy himself by ample test. If this suggested alternative leads to absurdity it thereby attests that in the opposite course there is wisdom and common sense. If the intent to shoot is and must be provable circumstantially, so likewise the ability so to do. To hold otherwise would devitalize the statute whose counter-threat to the gangster is debased to a mere gesture of disapproval. We are not construing an unloaded statute.

Indeed, in only one jurisdiction so far as we can find is it questioned that even an unloaded pistol is a "deadly weapon" under statutes similar to ours. Yet that court has accepted the rule that such weapon is presumed to be loaded. Lipscomb v. State, 130 Wis. 238, 109 N. W. 986. Other authorities are collected in the annotation of Luitze v. State, 204 Wis. 78, 234 N. W. 382, 74 A. L. R. 1202, 1209.

If the rule were otherwise it would not be sufficient that the state prove the pistol to have been loaded with cap and ball, for the latter may, in turn, be defective, or if sound, the weapon may not function; or if all are in order, the assailant may harbor a mental reservation against its use. The state's case is thus lured by degrees into the inner sanctum of the brigand's conscience whence it will rarely emerge in the likeness of a confession.

People v. Montgomery, 15 Cal. App. 315, 114 P. 792, 793; State v. Napper, 6 Nev. 113, are not found in point since under the statutes of both states there must be shown a present ability to commit violent injury. However, in the former case a conviction was upheld as resting "upon evidence from which the jury had the right to infer that the gun was loaded, and that the defendant threatened, or so conducted himself as would justify the inference that he intended to discharge it." Other cases cited upon this point by appellant are not found to support a contrary view either because they are construing dissimilar statutes or involve weapons shown to be unloaded. Fortenberry v. State, 190 Miss. 729, 1 So. (2d) 585, and Odom v. State, 172 Miss. 687, 161 So. 141, cited by appellant are not inconsistent with the views here expressed. The former emphasizes the requirement that the deadly means must be used to further the dominant or primary purpose of robbery. The latter case upheld a conviction although the unlawful taking was not the primary purpose but a natural and probable consequence of the original assault.

If the prima facie case needed evidential support it could be found in the circumstance that there is charge-

able to appellant the acts of the other codefendants, the weapon of one of whom was identified by witnesses, and that one of the defendants, Dindinger, testified to his part in the hold-up and pleaded guilty to the charge of robbery with a deadly weapon. One of the robbers defied Bishop with the assurance that if the safe containing money was not promptly opened they would blow it open, but that if they did they "would blow me (Bishop) first."

These considerations are not advanced to fortify doubts as to the prima facie sufficiency of the proof of deadly character where the weapon used is, as such proved or universally recognized as in that category and exhibited for the purpose of effecting robbery through a fear of immediate injury to the person. The law has from earliest times recognized the right of the victim to justify retaliation by extreme measures upon the reasonable assumption that the threat and danger are real because they have intentionally been so represented by the assailant. If the citizen may so presume in his own defense, the state may do so in defense of society, of which he is a representative unit. The provocation of bloodshed, even at the hands of the victim, was not unworthy of legislative notice. The court was not, therefore, in error in allowing the jury to draw the inferences which appellant himself intended the victim to draw.

The serious importance of this case both to the appellant and to the state has compelled a careful examination of its every phase. No reversible error in the trial has been made apparent and conviction must be upheld.

Affirmed, and Friday, January 18, 1946, is fixed as the date of execution of the sentence.