GILLESPIE, Chief Justice:
Robert L. Anderson was convicted in the Circuit Court of Forrest County of the crime of armed robbery. Defendant was granted a change of venue from Jackson County to Forrest County.
E. H. Bacot, an elderly business man who occupied an office on the fourth floor of the Pascagoula-Moss Point Bank Building, was in his office a short time before noon when the defendant came in, pulled up a chair and sat close to Mr. Bacot. Just before he sat down he said: “You don’t know me, but my name is John Thomas Hamilton, Jr. You are the son-of-a-bitch that made the telephone call that caused my dad to get killed in a shoot-out with the sheriff about twenty-one years ago; and I have been waiting all this time to get even with you.” Bacot was not the man that made the call in question, and the defendant was not John Thomas Hamilton, Jr. There had been a shoot-out in which one John Thomas Hamilton was killed about twenty years before. Defendant continued to insist that Bacot was the man that had caused his father to be killed. He exhibited a knife with a three and one-half inch blade, held it within twelve inches of Bacot’s face, and stated, “I came up here to cut your God-damned heart out.” Bacot continued to tell defendant that another party made the call to the sheriff, but defendant insisted that it was Bacot and finally said, “You caused me all this grief and caused me to be raised an orphan, without a dad; and I am here to get even with you. I am going to cut your Goddamned heart out.” Bacot told defendant that it would not do him any good if he carried out his threat and that it would not bring back his dad. Defendant then asked Bacot how much his life was worth to him. Bacot replied that there was no way to put a value on it. Defendant asked Bacot if he could get $20,000, but Bacot told him, “No, but I can get $10,000.” Anderson then told Bacot to go down in the bank and get $10,000 in $10 and $20 bills and “be damned sure it ain’t marked. Don’t try to pull anything funny; don’t call any police, because if you do, I’ve got a buddy waiting downstairs for you. He’ll be down there when you get there. Go down and get the money and be back here in five minutes. I am going to give you just five minutes to be back up here with the money.” Bacot made out a check for $10,000 and signed it. Defendant went with Bacot to the door of the office. Bacot took the elevator, went down to the bank where there were several people, including two men whom he did not know, and cashed the check. He then took the money to his office and gave it to defendant. The defendant then told Bacot, “Now, I want you to go down in the elevator with me and act like nothing ever happened, and if you see anybody, don’t say a word. I want you to go in front of the city hall and stand on that corner; and I want you to stand there and I want you to walk up and down in *750 front of the city hall for two minutes while I go through the courthouse and get with my buddy.”
Defendant then told Mr. Bacot to be sure to go to the Rotary Club after he had walked in front of city hall for two minutes. Bacot testified that he was afraid for his life and did all that defendant told him to do.
The first assignment of error is based on the fact that the jury took with them into the jury room a transcript of the preliminary hearing. The State offered in evidence for the purpose of showing the legality of defendant’s arrest the affidavit charging defendant with the robbery and the arrest warrant. The other part,of the record of the preliminary hearing was not admitted into evidence. When the jury retired to consider its verdict, the clerk included with the State’s exhibits the affidavit, arrest warrant, and what is designated as a transcript of docket. The part of the transcript improperly given the jury showed that the defendant was charged with armed robbery and was bound over to the grand jury. On the left side of the order was typewritten “No bond.” This was signed by the ex-officio justice of the peace. The other document which the jury took to the jury room and which was not admitted in evidence was a list of witnesses and their addresses. The committing magistrate certified that it was a correct copy of the proceedings had on November 8, 1971. No transcript of evidence was included. It was error to include the committing order and the list of witnesses, but it is inconceivable that it could have had any prejudicial effect on the defendant’s case. The same list of witnesses shown on this exhibit was listed on the back of the indictment which was properly before the jury. We fail to understand how the presence of the words “No bond” could prejudice the defendant. Therefore, any error in this regard was harmless.
It is next contended that the facts show that the money was obtained from Bacot through fraud and guile and the jury was not justified in finding defendant guilty of armed robbery.
The germane part of Mississippi Code 1942 Annotated section 2367 (1956) is as follows:
Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery

The elements of the crime of armed robbery are succinctly stated in Crocker v. State, 272 So.2d 664 (Miss. 1973), as follows:
(1) [F]elonious intent, (2) force or putting in fear as a means of effectuating the intent, and (3) by that means taking and carrying away the property of another from his person or in his presence. All these elements must occur in point of time. If force is relied upon as proof of the charge it must be force by which another is deprived of and the offender gains possession of the property. If putting in fear is relied upon, it must be the fear under duress of which the owner parts with possession. 272 So.2d at 665.
“The means used is important only to the extent that it reasonably instills a disabling apprehension of great personal injury.” Cittadino v. State, 199 Miss. 235, 24 So.2d 93 (1945).' The defendant’s threat that he would cut Bacot’s heart out, coupled with the menacing gestures with a knife, was enough to instill a disabling apprehension of great personal injury. The threat that defendant’s buddy would be down in the bank was sufficient to prevent Bacot from seeking help. The jury was fully justified in finding that defendant’s acts and words continued to influence Bac-ot while he obtained the money from the bank and handed it over to defendant. See *751 2 Anderson, Wharton’s Criminal Law and Procedure § 559 (1957).
Defendant’s third assignment of error is that the trial judge erred in failing to instruct the jury to disregard testimony given by Officer J. P. Winstead that defendant had confessed. The background of this assignment is as follows.
State Witness Hacker testified that defendant told him how easy it was to rob Mr. Bacot of $10,000. Hacker testified that defendant included in the statement some but not all of the facts as to how he robbed Mr. Bacot. Hacker was cross-examined at length by defendant’s attorney, who asked Hacker when he (Hacker) related this to the police, and Hacker replied “about a month later.” Defendant’s attorney then brought out that Hacker told Detective Winstead of defendant’s statement that he had robbed Mr. Bacot.
Following Hacker’s testimony the State introduced Detective J. P. Winstead, who testified to facts related to the question whether defendant was legally arrested. Winstead then testified that he gave defendant the Miranda warning and advised him of his right to counsel. He stated that defendant did not then give any statement but later gave a statement of confession in the presence of the Chief of Police, Mr. Bacot and defendant’s two attorneys. The witness stated that the statement was given at defendant’s request. Upon being asked what statement defendant made, defendant’s attorney objected. The objection was sustained, and the district attorney asked that the jury be excused. Outside the presence of the jury Winstead testified that defendant did not give a signed statement but that it was oral and was transcribed later in summary by the secretary at the police station. He testified that defendant admitted everything he was accused of at a time when his attorneys were present and counselling him. The State offered in evidence the unsigned summary of defendant’s statement after Winstead had stated defendant’s oral confession had been transcribed by the secretary. The record then shows the following:
MR. LOCKARD: Your Honor, we submit the statement is admissible.
THE COURT: Well, I’m going to overrule it. I’m not going to admit it for the simple reason, I understood Detective Winstead to say the statement is not signed by him. Is it?
THE WITNESS: No, sir, it’s not signed.
MR. BARLOW: We would offer the written statement, as such.
THE COURT: I’m not going to, under the circumstances here, I don’t believe. The motion will be overruled.
MR. GAUTIER: May I ask the jury to disregard the witness’ statement that he did receive a confession?
THE COURT: No, sir. He didn’t say that. Do you want further testimony of this witness?
MR. LOCKARD : The State rests.
The State concedes that the trial judge was in error in stating, “No, sir. He didn’t say that.” The record indicates that the judge probably understood that the reference was to a written document, because the unsigned written statement was the subject under discussion. Under the particular circumstances if defendant’s attorney wished to preserve this point, he should have pursued the matter further and clarified what he was referring to. If the judge was referring to a written confession, he was correct, because the witness had not stated in the presence of the jury that he had received a written confession.
Assuming the judge was in error, it was harmless beyond a reasonable doubt for the following reasons: (1) The State had made a prima facie showing that the oral confession was voluntary; (2) defendant’s attorney brought out that Officer Win-stead was told by Hacker of defendant’s *752 admission of guilt to Hacker; and (3) the confession made to Hacker was before the jury without objection.
Finally, defendant contends his motion for mistrial should have been sustained because of Officer Winstead’s remark about another crime. We have carefully examined this assignment of error and conclude that the inadvertent reference to another crime was not reversible error.
We are of the opinion that there is no reversible error and the case should be affirmed.
Affirmed.
PATTERSON, INZER, SUGG and WALKER, JJ„ concur.