530 So.2d 694 (1988)
Eugene DAVIS
v.
STATE of Mississippi.
No. 57732.
Supreme Court of Mississippi.
August 17, 1988.
*696 Jack R. Jones, III, Taylor, Jones, Alexander, Greenlee, Seale & Ryan, Southaven, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Deirdre D. McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PRATHER and ZUCCARO, JJ.
ZUCCARO, Justice, for the Court:

INTRODUCTION
The appellant, Eugene Davis, was indicted as a habitual offender pursuant to Miss. Code Ann. § 99-19-83 (1972) on the charge of armed robbery by the DeSoto County Grand Jury.
On November 18th and 19th, 1985, the appellant was tried before a jury and convicted. He was sentenced to life without parole in the custody of the Mississippi Department of Corrections. From that conviction and sentence Davis appeals.

STATEMENT OF FACTS
On May 13, 1984, John Ervin, Jr. (John), his wife, Mary Ann Ervin (Mary Ann), and their six children were returning to their home in Memphis, Tennessee after having traveled to Tutwiler, Mississippi, to attend church at Faith Temple where John was the pastor. The family was traveling north on Highway 61 in their station wagon. A Cadillac passed the Ervins' station wagon at a high rate of speed.
Several minutes later, John and Mary Ann drove past the Cadillac which had been driven off in a ditch. The Ervins turned around and went back to offer the driver of the car assistance. John Ervin got out of the car and approached the Cadillac in which Eugene Davis, the appellant, and George Eubanks, Jr. were riding.
After efforts to remove the Cadillac from the ditch failed, the Ervins agreed to give the appellant and Eubanks a ride to Eubanks' girlfriend's house in Memphis, Tennessee. On the way to Memphis, Ervin stopped at a store with a telephone so Eubanks could phone his girlfriend. The appellant got out of the car first. Appellant was riding in the front passenger seat with Eubanks and John Ervin. Mary Ann saw a gun in appellant's possession. Mary Ann screamed, "Honey he has a gun!" The gun was aimed at John. John reached across to grab the gun and said the words, "Satan, in the name of Jesus, I bind you." The appellant pulled the trigger but the gun misfired. Eubanks was attempting to force the rest of the family out of the station wagon. John started throwing rocks at Davis to prevent Davis from shooting him. Davis fired the gun two more times but it misfired both times. John, Mary Ann and the four oldest children had gotten out of the car when Eubanks and Davis got into the car and began driving off. Mary Ann realized that the two youngest children were still in the car. She began screaming so Davis stopped the car to allow Mary Ann to get the younger children out of the automobile. After Mary Ann rescued the children, Davis and Eubanks drove off in the Ervins' station wagon.
*697 The Ervins called the highway patrol and told the highway patrol that their car had been stolen at gun point by the two men. The Ervins told the law enforcement officials where the stalled Cadillac was located. The Ervins' car was discovered three days later in Memphis. When the station wagon was returned, all of the Ervins' property had been removed.
On August 28, 1985, Eugene Davis was indicted as an habitual offender pursuant to Miss. Code Ann. § 99-19-83 (1972) by the DeSoto County Grand Jury for the crime of armed robbery as defined by Miss. Code Ann. § 97-3-79 (1972). From said conviction and sentence, Eugene Davis appeals.

I. DID THE TRIAL COURT ERR IN REFUSING TO GRANT A MISTRIAL?
During voir dire of the prospective jury panel, one prospective juror asked in the presence of the other jurors if it was true that even if the defendant was sentenced to life he would actually only serve five or six years. The counsel for the defense objected. The judge instructed the jury to disregard the question. The defense moved for a mistrial arguing that the question tainted the remainder of the panel by implying that the defendant would get out of jail rather than actually serving a life sentence. The court overruled the motion for a mistrial.
The appellant argues on appeal that the trial court erred in failing to quash the jury panel and in failing to grant a mistrial.
Elementary to all trial proceedings is the proposition that the occurrence of any prejudicially incompetent matter or misconduct before a jury, the damaging effect of which cannot be removed by admonition or instructions, necessitates a mistrial. Smith v. State, 198 So.2d 220, 223 (Miss. 1967); Buchanan v. State, 204 Miss. 304, 37 So.2d 318 (1948). However, it is the well established rule in Mississippi that where a trial judge sustains an objection to testimony interposed by the defense in a criminal case and instructs the jury to disregard it, the remedial acts of the court are usually deemed sufficient to remove any prejudicial effect from the minds of jurors. Forrest v. State, 352 So.2d 1328 (Miss. 1977); Herron v. State, 287 So.2d 759 (Miss. 1974); Myrick v. State, 290 So.2d 259 (Miss. 1974). The jury is presumed to have followed the directions of the trial judge. Evans v. State, 422 So.2d 737, 744 (Miss. 1982); Hughes v. State, 376 So.2d 1349 (Miss. 1979); Gray v. State, 375 So.2d 994 (Miss. 1979); Duke v. State, 340 So.2d 727 (Miss. 1976).
We held in Schwarzauer v. State, 339 So.2d 980, 982 (Miss. 1976), "trial judges are peculiarly situated so as to decide (better and more logically than anyone else) when a trial should be discontinued." We further stated, "We recognize that the fair and orderly administration of justice requires that trial judges must have reasonable discretion in dealing with errant jurors who demonstrate their unwillingness to abide by the instructions of the court, or other unanticipated occurrences which transpire during trials." Id.
A proper objection was made by the defense whereupon the judge instructed the jury to disregard the statement. This assignment of error is without merit.

II. DID THE TRIAL COURT ERR IN OVERRULING THE APPELLANT'S MOTION FOR A MISTRIAL WHEN A WITNESS TESTIFIED ABOUT OTHER CRIMES COMMITTED BY EUGENE DAVIS?
John Ervin was called by the State as a witness. During his testimony, Ervin testified that all of the family's personal property was stolen from the car. The prosecutor asked what property was removed and the defense counsel objected. The judge sustained the objection but refused to admonish the jury by saying, "It's not before the jury at this time." The defense then moved for a mistrial which was overruled. The appellant argues that the mention of property being stolen from the car was improper use of other crimes evidence requiring reversal.
Mississippi follows the general rule that proof of a crime distinct from that alleged on the indictment should not be *698 admitted in evidence against the accused. Eubanks v. State, 419 So.2d 1330, 1331 (Miss. 1982); Loeffler v. State, 396 So.2d 18 (Miss. 1981); Massey v. State, 393 So.2d 472 (Miss. 1981). However, there are certain well established exceptions to this rule. Where the other crime admitted into evidence is connected with the one charged in the indictment, and proof of such other crime sheds light upon the motive of the defendant for the commission of the crime charged in the indictment, or where the fact of the commission of such other crime forms a part of a chain of facts so intimately connected that the whole must be heard in order to interpret its general parts, then evidence of other crimes is admissible. Tanner v. State, 216 Miss. 150, 157, 61 So.2d 781, 784 (1953).
The trial judge committed no error because the other crimes mentioned were part of the res gestae of the crime in the appellant's indictment and therefore admissible.[1] This assignment of error is without merit.

III. WAS THE ADMISSION OF TESTIMONY DESCRIBING A PHOTOGRAPHIC LINE-UP REVERSIBLE ERROR?
On direct examination, the prosecutor asked John Ervin whether he could identify the "taller of the two men" who had robbed his family on May 13. Ervin said, "yes, sir" and indicated Eugene Davis, the appellant.
The State then called Jay Clark, an investigator for the Highway Patrol Criminal Investigation Bureau, to the stand who testified that he had conducted a photographic spread in the presence of the Ervins. He testified that the photographs were of seven black males approximately the same age and size. He also testified that both John and Mary Ann Ervin had identified Eugene Davis in the photo spread while they were separated from each other.
The defense objected on grounds that the testimony improperly bolstered the previous in-court identification of Eugene Davis. The objection was overruled. At the conclusion of Clark's testimony, the State attempted to offer the photographs into evidence, the defense objected because the spread was not produced by the State during discovery. The court excluded the spread because it was not produced before trial and was therefore a violation of Criminal Rules of Procedure, Rule 4.06. The appellant argues that the testimony discussing the photographic spread was inadmissible since the spread itself was inadmissible.
In Hall v. State, 490 So.2d 858 (1986), the State failed to disclose shaving equipment found in the defendant's possession and the trial court excluded the evidence. However, testimony was admitted referring to the shaving equipment. The court did not reverse because defense counsel did not avail himself to the procedures outlined in Box v. State, 437 So.2d 19 (Miss. 1983).
Similarly, in the case sub judice, the appellant failed to follow the procedure set forth in Box v. State, 437 So.2d 19, 22-26 (Miss. 1983) which are:
(1) Upon the defense's objection, the trial court should give the defendant a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witness, inspecting the physical evidence, etc.
(2) If after this opportunity for familiarization, the defendant believes he may be prejudiced by lack of opportunity to prepare to meet the evidence, he must request a continuance. Failure to do so constitutes a waiver of the issue.
(3) If the defendant does request a continuance the State may choose to proceed with trial and forego using the undisclosed evidence. If the State is not willing to proceed without the evidence the trial court must grant the requested continuance.
Cole v. State, 525 So.2d 365, 367-68 (Miss. 1987); Box v. State, 437 So.2d 19, 22-26, (Miss. 1983). Therefore, on the authority of *699 Hall v. State, supra, we find this assignment of error to be without merit.

IV. WAS ADMISSION OF THE TESTIMONY OF JAY CLARK ERROR CONSTITUTING AN IMPROPER BOLSTERING OF AN IN-COURT IDENTIFICATION?
On direct examination, Jay Clark, investigator, testified over objection that the victim was able to identify Eugene Davis, appellant, and his accomplice from a "photo spread". The objection was to the effect that the testimony was to bolster the previous in-court identification by the victim, Mr. John Ervin. The objection was overruled and the appellant assigns the trial court's ruling as error.
The State asserts that the counsel for the defense "opened the door" to the matter of the "extra-judicial identification" made by the Ervins during cross-examination of John Ervin.
After reading the pertinent part of the record, we find that the appellee is correct in arguing that the appellant first introduced the evidence of the "extra-judicial identification". The general rule is that a defendant cannot complain of the evidence which he himself brings out. Simpson v. State, 366 So.2d 1085, 1086 (Miss. 1979); Stone v. State, 210 Miss. 218, 49 So.2d 263 (1950); Winters v. State, 449 So.2d 766, 771 (Miss. 1984).
Regardless of whether the appellant "opened the door" or not; however, Fells v. State, 345 So.2d 618, 622 (Miss. 1977) holds that the principal witness to a crime may testify concerning an out-of-court identification. This is true whether the out-of-court identification occured in a police line-up, a personal confrontation or otherwise because the initial identification being nearest in time to the event has, [in our opinion,] the greater likelihood of accuracy and truthfulness being undimmed by fading memory and intervening events occasioned by the passage of time.
This assignment of error is without merit since case law permits the principal witness to a crime to testify concerning an out-of-court identification. Furthermore, the appellant should not be allowed to complain since counsel for the defense elicited the testimony to begin with.

V. DID THE TRIAL COURT ERR IN FAILING TO GRANT INSTRUCTIONS D-2, D-3 AND D-7 FOR THE APPELLANT?

VI. DID THE TRIAL COURT ERR IN GRANTING INSTRUCTIONS S-1 FOR THE STATE?
The instructions requested by the defendant but refused by the court are as follows:
INSTRUCTION D-2
The court instructs the jury that before you can find the Defendant guilty of armed robbery you must find, beyond a reasonable doubt that the weapon if any, was capable of causing bodily harm. If this fact is not proved beyond a reasonable doubt then you cannot find the Defendant guilty of armed robbery.
INSTRUCTION D-3
The Court instructs the jury that robbery is the lesser included offense of armed robbery. In this case you can consider as one (1) of your options for a verdict the crime of robbery.
INSTRUCTION D-7
The Court instructs the jury that a deadly weapon is any object, article or means which; when used as a weapon is, under the existing circumstances, reasonably capable or likely to produce death or serious bodily harm to a human being upon whom the object, article or means is used as weapon.
The Court further instructs the jury that if you find that the weapon, if any, was not capable at the time of producing death or serious bodily injury to a human being then the Defendant cannot be convicted of the crime of robbery with a deadly weapon.
Appellant asserts that the court erred in refusing to grant D-2 because there was an issue as to whether or not the *700 gun was a deadly weapon since it misfired three times during the robbery. That is, the gun, if incapable of firing, would not be a deadly weapon according to the defendant.
The elements of a deadly weapon were set out in Instructions S-1 and S-2 given by this court.
S-1 reads as follows:
The Defendant, EUGENE DAVIS, has been charged with the crime of Robbery with a Deadly Weapon.
If you find from the evidence in this case beyond a reasonable doubt that:
1.) One (1) 1981 Ford Fairmont station wagon, Tennessee Tag No. 1X6J10, was the personal property of John Allen Ervin, Jr.; and
2.) On May 14, 1984, the Defendant took the said property from John Allen Ervin, Jr. from his person by putting John Allen Ervin, Jr. in fear of immediate personal injury by the exhibition of a deadly weapon, to-wit: a pistol; and
3.) That said taking was against the will of John Allen Ervin, Jr.,
then you shall find the Defendant, EUGENE DAVIS, guilty of Robbery with a Deadly Weapon.
If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the Defendant not guilty.
S-2 reads as follows:
It is a question of fact for the Jury to determine whether the pistol claimed to have been used by Eugene Davis was a deadly weapon in the manner claimed to have been used in this case.
A deadly weapon may be defined as any object, article or means which, when used as a weapon is, under the existing circumstances, reasonably capable or likely to produce death or serious bodily harm to a human being upon whom the object, article or means is used as a weapon.
In Duckworth v. State, 477 So.2d 935 (Miss. 1985), the instruction which was given by the court and upheld by this Court was identical to the one above. Therefore, the language used is the legally correct definition of deadly weapon.
We find that D-2 and D-7 which were refused by the court are repetitive of S-2 which was given by the court. The jury did have the option to find that the gun used by the defendant was or was not a deadly weapon. This assignment of error is without merit.
The appellant argues that the trial court failed to give an instruction giving the jury the alternative to find the defendant guilty of the lesser included offense of robbery. The court did give an instruction giving the option of robbery. This option was conveyed in Instruction C-3.
Instruction C-3 reads as follows:
If the State has failed to prove all of the essential elements of the crime of Robbery with a Deadly Weapon, you may consider the lesser charge of Robbery. However, it is your duty to accept the law given to you by the Court; and if the facts and the law warrant a conviction of the crime of Robbery with a Deadly Weapon, then it is your duty to make such finding uninfluenced by your power to find a lesser offense. This provision is not designed to relieve you from the performance of an unpleasant duty. It is included to prevent a failure of justice if the evidence fails to prove the original charge but does justify a verdict for the lesser crime.
If you find that the State has failed to prove any one of the essential elements of the crime of Robbery with a Deadly Weapon, you will proceed with your deliberations to decide whether the State has proven beyond a reasonable doubt all of the elements of the lesser crime of Robbery.
Robbery is the felonious taking of personal property of another, in his presence or from his person and against his will, by violence to his person or by putting him in fear of some immediate injury. Robbery is distinguished from Robbery with a Deadly Weapon by the absence or failure to prove use of a deadly weapon. If the State has failed to prove the elements of either Robbery with a Deadly *701 Weapon or Robbery, then you shall find the Defendant not guilty.
Instruction C-3, given by the court, adequately instructed the jury as to the applicable law.
Our law is well-settled that jury instructions are not given unless there is an evidentiary basis in the record for such. Colburn v. State, 431 So.2d 1111, 1114 (Miss. 1983); Where under the evidence a reasonable jury could find the defendant not guilty of the principal charge made in the indictment but guilty of a lesser included offense, the trial judge ordinarily should instruct the jury regarding the elements of that lesser included offense. Knowles v. State, 410 So.2d 380, 382 (Miss. 1982). Ruffin v. State, 444 So.2d 839, 840 (Miss. 1984), expressly states that, only where the evidence could only justify a conviction of the principal charge should a lesser included offense instruction be refused. Fairchild v. State, 459 So.2d 793, 800 (Miss. 1984). After reviewing the record it is clear that the jury was given the option to find the appellant guilty of the lesser included offense of robbery. It is also clear that the jury was given the opportunity to determine whether or not the gun was a deadly weapon.
The record reflects that the jury was fully and fairly instructed concerning the applicable law; therefore, it was not error for the lower court to have refused D-2, D-3 and D-7. Mullins v. State, 493 So.2d 971, 976 (Miss. 1986); Billiot v. State, 454 So.2d 445, 461 (Miss. 1984). This assignment of error is without merit.

VII. DID THE TRIAL COURT ERR IN FAILING TO GRANT A MISTRIAL DURING THE CLOSING ARGUMENT OF THE PROSECUTOR?
During closing argument the prosecutor made the following comments:
ASSISTANT DISTRICT ATTORNEY:
You know everybody says that there's not enough being done about crime. I say it. Mr. Kelly says it. The police officers say it. I'm sure you've said it. But once we get a case to trial and once we get a defendant before a jury, once we can put 12 honest people in the jury box, the people have an opportunity to do something about it. You've got an opportunity today to do something good for your fellow citizens. You've got an opportunity today to remove somebody from society who doesn't need to be there. Now, ladies and gentlemen, we were a heartbeat away from a massacre of a family down at Walls, Mississippi. I cannot emphasize to you how serious this case is. I think you know that. I don't think it needs emphasis. We were a heartbeat away from a capital murder.
The counsel for the defense objected as follows:
COUNSEL FOR DEFENDANT (Mr. Jones): Your Honor, we object to that comment concerning capital murder. That's an improper comment in the Jury's presence. That's not the case.
THE COURT: I don't think that's a logical inference from this evidence before the Jury.
COUNSEL FOR DEFENDANT (Mr. Jones): Did I understand the Court to sustain the objection?
THE COURT: Yes, sir.
COUNSEL FOR DEFENDANT (Mr. Jones): We ask that the Jury be admonished to disregard that remark.
THE COURT: The charge is armed robbery, not capital murder.
COUNSEL FOR DEFENDANT (Mr. Jones): And we move for a mistrial.
THE COURT: Overruled.
As set forth in Craft v. State, 226 Miss. 426, 84 So.2d 531 (1956), the test to determine whether an improper argument by a prosecutor requires reversal is whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created.
According to Clemons v. State, 320 So.2d 368, 371 (Miss. 1975) there are certain well-established limits beyond which counsel is forbidden to go; he must confine himself to the facts introduced in evidence and to the fair and reasonable *702 deductions and conclusions to be drawn therefrom, and to the application of the law, as given by the court, to the facts. The court, in Clemons, further stated:
So long as counsel in his address to the jury keeps fairly within the evidence and the issues involved, wide latitude of discussion is allowed, but, when he departs entirely from the evidence in his argument, or makes statements intended solely to excite the passions or prejudices of the jury, or makes inflammatory and damaging statements of fact not found in the evidence, the trial judge should intervene to prevent an unfair argument. Moreover, this Court will not withhold a reversal where such statements are so inflammatory [in the judgment of this Court] as to influence the verdict of the jury, and thus prevent a fair trial.
Id. at 372. We find that the statement made by the prosecutor was harmless and not capable of creating bias or prejudice on behalf of the jury.
Furthermore, the trial court properly admonished the jury to disregard the statement in issue and that it is presumed that the jury did disregard it. Clemons v. State, 320 So.2d 368 (Miss. 1975). This assignment of error is without merit.

VIII. DID THE LOWER COURT ERR IN SENTENCING THE APPELLANT AS AN HABITUAL OFFENDER?
The appellant argues that the proof admitted at the sentencing hearing on behalf of the State to support a life sentence pursuant to the Mississippi Habitual Offender Statute failed to show that the convictions arose out of separate incidents and failed to show that the appellant had served a year or more on any of his convictions of crimes of violence.
After studying the record carefully we find that this appellant was properly indicted and sentenced as an habitual offender pursuant to Miss. Code Ann. § 99-19-83 (1972). This assignment of error is without merit.

IX. DID THE TRIAL COURT ERR IN FAILING TO GRANT THE MOTION FOR DIRECTED VERDICT, PEREMPTORY INSTRUCTION, AND JNOV?
The appellant argues that the purported deadly weapon used in the robbery, the subject of this appeal, was a pistol that would not fire. The appellant cites only one case, Bell v. State, 259 So.2d 118 (Miss. 1972) in support of this assignment of error. In Bell, this Court stated, "All the State was required to prove under the provisions of this statute [armed robbery] is that appellants took or attempted to take the personal property of [another] from his presence, against his will, by violence or by putting him in fear of immediate injury to his person by exhibiting a deadly weapon." Bell at 120. The appellant argues that since the proof showed that the weapon did not operate, the requirement that a deadly weapon be used was not met. Appellant argues that a reversal of the appellant's conviction is required.
The existence of a deadly weapon is a question of fact for the jury to decide. Duckworth v. State, 477 So.2d 935, 938 (Miss. 1985). Duckworth involved a blank starter pistol. This Court affirmed the conviction, holding that the issue of whether the pistol was a deadly weapon was properly resolved by the jury.
Cittadino v. State, 199 Miss. 235, 244, 24 So.2d 93, (1946) is controlling in this instance. Cittadino involved an argument to the effect that since there was neither proof that the pistols were loaded nor was their use as bludgeons intimated that the State failed to satisfy the existence of a deadly weapon.
We stated, "A pistol has, under our statutes denouncing the exhibition or carrying of such weapons, been judicially declared to be a "deadly weapon" without proof that it is loaded or presently capable of committing a violent injury. Gamblin v. State, 45 Miss. 658 (Miss. 1871); Mitchell v. State, 99 Miss. 579, 55 So. 354 (1911); State v. Bollis, 73 Miss. 57, 19 So. 99 (1895)."
In Cittadino, we stated:
Our robbery statutory (Section 2362) follows the common law definition and the offense may be committed when personal property of another is taken from him or *703 in his presence "by putting such person in fear of immediate injury to his person." The means used is important only to the extent that it reasonably instills a disabling apprehension of great personal injury. Section 2367 under which appellant was convicted, is merely an extension of Section 2362 and adds that when the taking is accomplished "by the exhibition of a deadly weapon" conviction may carry the death penalty. The evil sought to be abated was the employment of such weapons as are held generally, and therefore by the victim, to be deadly.

We do not have a case where the weapon has been shown not to be deadly because not loaded or otherwise incapable of use as a firearm. Nor do we treat of the manner of its use since it was not used to effect a battery but accomplished its purpose by its challenge that the actor was ready, able and quite willing to make it deadly. The limited option, made proverbial by the techniques of a ruthless banditry, of money or life is a representation by the culprit that the weapon is deadly and that he will kill because he can kill. This representation, whether voiced or not, is what the bandit expects or insists that the victim comprehend and so accept as literally true, whereby he is immobilized by a reasonable fear. This is the substance from which a genuine inference of the deadly character of the weapon may be formed. (emphasis added)
Id. 199 Miss. at 245-246, 24 So.2d 93. See also Annot. 79 A.L.R.2d 1412 (1961); Annot. 81 A.L.R.3d 1006 (1977) (discussing the effect of unloaded pistols or toy guns on charges requiring use of deadly weapons).
In passing upon a motion for a directed verdict, all evidence introduced by the State is accepted as true, together with any reasonable inferences that may be drawn from that evidence, and if there is sufficient evidence to support the verdict, the motion for a directed verdict must be overruled. Shelton v. State, 445 So.2d 844, 848 (Miss. 1984); Bayse v. State, 420 So.2d 1050 (Miss. 1982).
The standard by which a judgment non obstante veredicto is analyzed has been reiterated frequently. In Stubblefield v. Jesco, 464 So.2d 47, 54 (Miss. 1984), this Court stated:
Where a motion for j.n.o.v. has been made, the trial court must consider all the evidence in the light most favorable to the non-movant, who must also be given the benefit of all favorable inferences that may be reasonably drawn from the evidence; if the facts and inferences so considered point so overwhelmingly in favor of the movant that reasonable men could not have arrived at a contrary verdict, granting the verdict is required; on the other hand, if there is substantial evidence opposed to the motion, i.e. evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied and the jury's verdict allowed to stand.
See also Baker Service Tools v. Buckley, 500 So.2d 970, 972 (Miss. 1986).
A reasonable person would view a pistol as a deadly weapon. The fact that the pistol misfired three times does not preclude its capability to fire on the fourth attempt. Furthermore, in the absence of any proof by the appellant that the pistol was incapable of firing and the fact that the pistol was not available for inspection at trial make it even more practical that a reasonable man could determine that the pistol was a deadly weapon. This assignment of error is without merit.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] Following the Mississippi Rules of Evidence effective January 1, 1986 the principle of Res Gestae was merged into Rule 803.