# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00573-COA

**RICKEL DAVIS**                                                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/26/2022 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY | BRENDA F. MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/08/2023 |
| MOTION FOR REHEARING FILED: | |

### BEFORE BARNES, C.J., WESTBROOKS AND McDONALD, JJ.

### McDONALD, J., FOR THE COURT:

¶1.     Rickel Davis appeals his Bolivar County Circuit Court jury conviction for armed robbery with a sentencing enhancement based on the victim's age. Davis argues two issues: (1) that the trial court abused its discretion in denying his motion for a new trial based on the weight of the evidence and (2) that the circuit court erred in refusing to give his lesser-included-offense instruction for simple assault. Because of these alleged errors, Davis argues that we should reverse and remand the matter for a new trial with the proposed instruction. Finding that the trial court did not abuse its discretion in denying the motion for a new trial based on the weight of the evidence and that no reasonable jury could have found Davis

guilty of simple assault and not armed robbery, this Court affirms the trial court's order denying Davis's motion for judgment notwithstanding the verdict or a new trial.

## FACTUAL AND PROCEDURAL HISTORY

¶2.     On June 6, 2021, Isaac Shorter, a seventy-four-year-old man, was jogging early in the morning in his neighborhood in Cleveland, Mississippi, when he noticed a man following him. This man was later identified as Rickel Davis. Davis followed Shorter back to his home, where he pulled a gun on Shorter. Shorter testified that Davis "told me to get the money out of my pocket." Shorter did not have any money in his pocket, and he told Davis he was "going to have to shoot me." Shorter then turned, ran into his house, got a gun, and returned outside. Davis, seeing Shorter with the gun, turned and ran away.

¶3.     Officer Justin Coleman was one of the officers who responded to Shorter's call regarding an armed robbery at his residence. While other officers went to Shorter's address to investigate, Coleman patrolled the neighborhood. While patrolling, he saw a black male who was walking near the crime scene enter a residence. Meanwhile, other officers spoke with Shorter, and Shorter contacted the grounds director of the building next to Shorter's house, the Amzie Moore House,[1] because he knew it had cameras. While reviewing the camera footage with the responding officers, Shorter identified the man who robbed him. The other officers shared a description of the suspect with Coleman, who responded that he had seen a man matching the description entering a residence earlier near the crime scene.

¶4.     Officers then went to the residence Coleman identified and spoke with the owner,

_____

[1] As a historic landmark, the Amzie Moore House has various cameras surveilling the surrounding area.

Davis's grandmother, who consented to a search of the home. Davis was present during the search, and in an open closet, the officers found clothes matching those worn by the man in the surveillance footage. They also found a .22-caliber pistol that matched the description of the gun that Shorter had provided. Davis was taken into custody and was later indicted for armed robbery with an elder enhancement.[2] Davis entered a plea of not guilty.

¶5. During trial, the prosecution called Shorter as a witness. During direct examination, the prosecutor asked:

> Q. Mr. Shorter, could you tell us -- were you scared, afraid, or what were your feelings when he pointed the gun at you?
> A. Well, when he pointed the gun at me, and I know I wasn't going to give him no money, so I had to knowed he was going to shoot me. And so I went for defense.
> Q. Okay. Did it scare you?
> A. Yeah.

The defense did not object to this questioning by the State. During cross-examination, the defense attorney asked Shorter about what Davis said to him:

> Q. Now, the person that was holding you at gunpoint told you to empty your pockets? Is that what that person said?
> A. Yes.

---

[2] Mississippi Code Annotated section 99-19-351 (Rev. 2020) states:
The penalty for any felony or misdemeanor which is a crime of violence or the crime of burglary or breaking and entering the dwelling of another shall be subject to enhancement as provided in Sections 99-19-351 through 99-19-357 if the felony or misdemeanor was committed against any victim who is sixty-five (65) years of age or older or who is disabled as described in 42 U.S.C. § 12102.
Mississippi Code Annotated section 99-19-357 (Rev. 2020) states:
The penalty for the offense may be enhanced by punishment for a term of imprisonment of up to twice that authorized by law for the offense committed, or a fine of up to twice that authorized by law for the offense committed, or both.

Q. Do you remember giving a statement to the Cleveland Police Department about all this, an official statement?

A. Yes, I give a statement to them. Yes.

Q. And is that also what you told the police, is this person who pointed the gun at you told you to empty your pockets?

A. Yes.

Q. What happened next after the person who pointed this gun at you said, "Empty your pockets"? What happened next?

A. Well, I went in my pocket, brought my hands out, and told him that he going to have to shoot me. And I turned around and ran in the house.

¶6. After the close of evidence, the judge and parties met in chambers to discuss jury instructions. Davis requested instructions for a lesser-included offense of simple assault. The judge refused the instructions based on *Downs v. State*, 962 So. 2d 1255 (Miss. 2007), stating:

> It would seem that this case, which appears to continue to be good law; it's a 2007 case -- finds that -- I think it says, "In a factually appropriate case simple assault would be a lesser included offense." This was a robbery case, talks about "of robbery." I would think the analysis would be the same with regard to armed robbery. I mean -- yeah, armed robbery.
>
> However, it goes on to say - it appears to me that this is fact intensive analysis. Paragraph 20, "This Court has stated that the evidence on a particular case generally warrants a lesser included offense instruction if a rational or reasonable juror could find the defendant not guilty of the principal offense charged in the indictment, yet guilty of a lesser included offense. Our review of the record leads us to conclude that the jury could not have found Downs guilty of simple assault. As stated previously, defendant is not entitled to a lesser-included offense instruction if the evidence does not support such instruction. Here the entitlement to a lesser-included offense instruction on simple assault presumes that the jury could find Downs guilty of simple assault."
>
> And in the facts of this case, *Downs v. State*, the Supreme Court found that no reasonable or rational juror could have found the defendant guilty of simple assault based upon the facts that were presented at trial.
>
> I feel the same way about this case. At this juncture, I don't see anything that

4

would suggest simple assault, as opposed to armed robbery. And, therefore, D-1, D-2, and D-3 will be refused.

¶7. After closing arguments, the jury deliberated and returned a verdict of guilty on the charge of armed robbery with an elderly victim enhancement. Davis moved for judgment notwithstanding the verdict or, in the alternative, a new trial. The court denied Davis's motion and entered its judgment and sentence on the jury's verdict, sentencing Davis to ten years in custody, with five years suspended and five years to serve. Davis appealed.

¶8. On appeal, Davis makes two arguments: (1) the overwhelming weight of the evidence contradicted a finding of the fear element of armed robbery; and (2) the circuit court erred in denying his proposed instruction on the lesser-included offense of simple assault.

**STANDARD OF REVIEW**

¶9. "A challenge to the weight of the evidence is separate and distinct from a challenge to the legal sufficiency of the evidence." *Brown v.* State, 269 So. 3d 1262, 1264 (¶9) (Miss. Ct. App. 2018) (quoting *Bradford v. State*, 102 So. 3d 312, 316 (¶16) (Miss. Ct. App. 2012)); *accord Little v. State*, 233 So. 3d 288, 292 (¶20) (Miss. 2017). A challenge to the weight of the evidence seeks a new trial. *Id*. Reversal is only warranted where the trial court abused its discretion by denying a new trial. *Id*. "This Court will not disturb a verdict unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id*. (Internal quotation marks omitted). This Court views the evidence in the light most favorable to the verdict. *Id*.

¶10. In this context, we review the decision of the circuit court to refuse a lesser-included offense instruction de novo. *Downs*, 962 So. 2d at 1258 (¶10). Further, "[t]he circuit court

5

is given great deference in its decision to instruct the jury." *Johnsey v. State*, 296 So. 3d 93, 95 (¶8) (Miss. Ct. App. 2019). As stated in *Downs*, 962 So. 2d at 1258 (¶9):

> The Court does not single out any instruction or take instructions out of context; rather, the instructions are to be read together as a whole. A defendant is entitled to have jury instructions given which present his theory of the case. This entitlement is limited, however, in that the Court is allowed to refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.

(Quoting *Spicer v. State*, 921 So. 2d 292, 313 (¶43) (Miss. 2006), *abrogated on other grounds by O'Connor v. State*, 120 So. 3d 390, 400 (¶28) (Miss. 2013)). The defendant must be able to point to some evidence in the record from which a reasonable juror could find him both not guilty of the indicted offense and instead guilty of the lesser-included offense. *Gilmore v. State*, 119 So. 3d 278, 286 (¶13) (Miss. 2013).

### DISCUSSION

### I. Weight of the Evidence

¶11. Davis argues that the circuit court abused its discretion by denying his post-trial motion requesting a new trial on the ground that the jury's verdict was against the overwhelming weight of the evidence presented by the State. He contends that allowing the verdict to stand will sanction an "unconscionable injustice."

¶12. Mississippi Code Annotated Section 97-3-79 (Rev. 2020) provides:

> Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or *by putting such person in fear of immediate injury to his person* by the exhibition of a deadly weapon shall be guilty of robbery . . . .

(Emphasis added).[3] Accordingly, in order to be convicted of armed robbery, among other things, the State must show that the victim was put in fear of immediate injury. *See id.*

¶13. While a showing of fear on the part of the victim is one way to establish the fear element, it can also be satisfied "if the victim expects or anticipates that personal injury may result if he does not follow the assailant's instructions" when the assailant threatens "the use of a deadly weapon." *Young v. State*, 95 So. 3d 685, 687 (¶9) (Miss. Ct. App. 2011) (quoting *Evans v. State*, 957 So. 2d 430, 436 (¶19) (Miss. Ct. App. 2007) (citing *Harper v. State*, 434 So. 2d 1367, 1368 (Miss. 1983))).

¶14. In this case, Shorter anticipated that personal injury might result if he did not follow his assailant's orders, as evidenced by the fact that he said, "[Y]ou'll have to shoot me," because he did not have any money to give to the assailant. In addition to Shorter anticipating harm if he refused Davis's command, Shorter specifically stated at trial that he was afraid. The defense did not challenge this statement, did not object to the questioning, and did not present any evidence to the contrary. The foregoing authority and testimony clearly establish evidence of the fear element, and a reasonable jury could find Shorter was placed in fear.

¶15. In *Bradford*, 102 So. 3d at 316 (¶17), we held that the uncontradicted testimony of the victim of attempted arson supported the jury's verdict. In that case, Bradford did not testify

---

[3] "In order to obtain a conviction for the crime of robbery, the State must prove beyond a reasonable doubt that the defendant (1) feloniously [took] (2) the personal property of another (3) in his presence or from his person and (4) against his will, (5) by violence to his person or by putting such person in fear of some immediate injury to his person[.]" *Downs*, 962 So. 2d at 1259 (¶15).

7

or call any witnesses contradicting the victim's testimony. *Id*. In this case, Davis did not testify, did not call any witnesses, and could not point to any evidence that contradicted Shorter's testimony that he was placed in fear. The only evidence Davis argues showed a lack of fear was that after Shorter retreated to the safety of his home, he returned with a gun to confront Davis. However, a victim's defensive actions do not negate the fear a victim felt at the time of the robbery. *Young*, 95 So. 3d at 686 (¶2). In *Young*, the defendant robbed a business by brandishing a firearm, grabbing an employee, and demanding money. *Id*. at 686. The employee gave the defendant his wallet, and the defendant fled. *Id*. The victim and another employee then chased after the defendant. *Id*. Young argued that this pursuit was evidence that the victim was not put in fear. *Id*. at 687. However, this Court held that the victim's testimony that "there was a gun" and "a man with a mask was trying to rob this place" was proof that the victim was afraid because they anticipated harm would come to them if they refused the assailant's demands. *Id*.

¶16. In the present case, Davis pointed a gun at Shorter and told him to "empty your pockets." Shorter put his hands in his pockets, realized he had nothing in them, and said, "[y]ou're going to have to shoot me," before fleeing into his home. Shorter then retrieved his own gun, and went back outside to fend off his attacker. When Davis then fled, Shorter called the police. In *Young,* the victim pursued the defendant after the threat had passed, and we held that this was not evidence that the victim was not put in fear. *Id*. In this instance, as we are required to view the evidence in the light most favorable to the verdict, Shorter's returning from inside his house with a gun was not necessarily evidence that he was not

8

afraid at the time of the robbery but, rather, that he was acting in continuous defense of himself after the robbery, which prompted Davis to flee.

¶17.    Davis relies on the canon that "actions speak louder than words" cited in *Cittadino v. State*, 199 Miss. 235, 245, 24 So. 2d 93, 95 (1945), to argue that Shorter's act of returning with a weapon was evidence that he was not afraid.    We do not find this argument convincing.

¶18.    In *Cittadino*, the Mississippi Supreme Court noted that "actions speak louder than words" when it found that the State was not required to prove that a firearm was loaded in order to prove that the firearm was perceived by the victim as a deadly weapon.  *Id*., 24 So. 2d at 96.  The action of pointing a firearm at the victim was enough to sufficiently put him or her in fear that if he or she did not turn over their property, then the assailant could and would use the firearm as a deadly weapon.  *Id*. at 245-46, 24 So. 2d at 96.

¶19.    It is clear that *Cittadino* discussed the perception of a deadly weapon on the part of the victim, not the fear element of armed robbery.  Davis cites no authority to support his argument that "actions speak louder than words" regarding the element of fear.  Moreover, the canon of "actions speak louder than words" does not negate evidence of Shorter's fear at the time of the robbery.  One cannot ignore the fact that Shorter fled in the first place, which is clearly evidence of fear.  Shorter fled from his assailant in order to retrieve a gun to protect himself.  A reasonable person does not protect themselves from danger without the presence of fear.  If we were to hold that any attempt to defend oneself, even after fleeing from an assailant, eliminates the fear element, we would effectively be requiring victims to

9

never defend themselves or risk that the assailant could not be convicted of their crimes.

¶20.    Again, we view the evidence in the light most favorable to the verdict. *Bradford*, 102 So. 3d at 314 (¶7); *Little*, 233 So. 3d at 289 (¶1). Davis points to no evidence in the record that supports his argument that Shorter was not placed in fear, and the jury could have reasonably considered the evidence to have weighed in favor of the State's argument. Accordingly, we do not find the trial court abused its discretion in denying his motion for a new trial.

## II.    Lesser-included-offense Instruction

¶21.    Davis next argues that his lesser-included-offense instruction should have been presented because there was insufficient evidence of a demand for money, which is the distinguishing element between armed robbery and simple assault. Based on the standard set forth in *Gilmore*, 119 So. 3d at 286 (¶13), which requires "a defendant must point to some evidence in the record from which a jury reasonably could find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser-included offense[,]" we find that the trial court did not err by denying Davis's requested instruction.

¶22.    In a recent decision, a defendant was charged with two counts of murder/manslaughter. *Clayton v. State*, No. 2021-KA-00505-COA, 2023 WL 1983169 at *4 (¶11) (Miss. Ct. App. Feb. 14, 2023) (unpublished). After a trial, Clayton was convicted of two counts of first-degree murder. *Id*. Clayton sought to have his judgment reversed due to insufficient evidence as well as the trial court's refusal to grant a lesser-included-offense instruction on manslaughter. *Id*. at *3 (¶5). This Court agreed that manslaughter was a

10

lesser-included-offense of first-degree murder, and a defendant may be entitled to such an instruction. *Id*. at *4 (¶9). However, "[a] defendant has a right to a lesser-included-offense instruction *if there is some evidence from which a reasonable juror could find him both not guilty of the indicted offense and guilty of the lesser-included-offense*." *Id*. at 3 (¶6) (emphasis added) (citing *Gilmore v. State*, 119 So. 3d 278, 286 (¶13) (Miss. 2013)). In determining whether the evidence supported Clayton's lesser-included-offense instruction, this Court stated that "it was Clayton's responsibility at trial to point the trial judge to some record evidence from which the jury could have found him not guilty of first-degree murder but guilty of second-degree murder." *Id*. at *5 (¶12). Based on the fact that Clayton's counsel offered no argument whatsoever in support of the manslaughter instruction, we held the trial court correctly found that there was no evidence in the record supporting the notion that a reasonable jury could have found Clayton not guilty of first-degree murder and, instead, guilty of manslaughter. *Id*. Accordingly, Clayton was not entitled to a lesser-included-offense instruction. *Id*.; *see also Johnsey*, 296 So. 3d at 97 (¶16) (holding that a defendant was not entitled to a jury instruction on the lesser-included-offense of trespass for a burglary charge where he could point to no evidence in the record on which a reasonable jury could have found him guilty of trespass but not guilty of burglary).

¶23.    Davis argues that the trial court should have allowed a lesser-included-offense instruction of simple assault based on *Downs* because in *Downs* the court found that in factually appropriate cases, simple assault can be a lesser-included-offense of robbery. Davis argues that following the same reasoning in *Downs*, simple assault could be considered a

11

lesser-included-offense of armed robbery. Based on this reasoning, Davis believes he should have been entitled to a lesser-included-offense instruction for simple assault. However, he must still point to the evidence that proves he was not guilty of armed robbery.

¶24. Davis claims there was no evidence of a demand for money; therefore, a reasonable juror could have found him not guilty of armed robbery. But Shorter testified that Davis did make a demand for money in the form of the command "empty your pockets." Based on this testimony, a reasonable jury would consider the element of a demand for money to have been met, as any time an assailant points a gun and commands a person to empty his pockets, it is reasonable to assume it is because they are robbing the person of his property. Because Davis failed to point to any evidence in the record to rebut Shorter's testimony, and given the record before us, we find that no reasonable jury could have found him not guilty of armed robbery and guilty of simple assault. Accordingly, the judge did not err when he refused Davis's lesser-included-offense instruction.

**CONCLUSION**

¶25. The trial court did not err in denying Davis's motion for judgment notwithstanding the verdict or a new trial because the jury's decision was not against the overwhelming weight of the evidence. Further, we do not find Davis's arguments regarding the lesser-included-offense instruction convincing, as there was evidence in the record upon which a reasonable juror could have found Davis guilty of the indicted offense. The trial court did not err in refusing his request for a lesser-included-offense instruction. For these reasons, we affirm.

¶26. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**