957 So.2d 430 (2007)
Wilbur Lee EVANS a/k/a Wilbur Willie Lee Evans a/k/a Wilbur Jones a/k/a Wilbert Jones, Jr. a/k/a Grace, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-01802-COA.
Court of Appeals of Mississippi.
May 29, 2007.
*432 Craig Andrew Conway, Attorney for Appellant.
Office of the Attorney General by Deirdre McCrory, Attorney for Appellee.
Before KING, C.J., CHANDLER AND ISHEE, JJ.
CHANDLER, J., for the Court.
¶ 1. A Lauderdale County jury convicted Wilbur Lee Evans of armed robbery. The Circuit Court of Lauderdale County sentenced Evans as a habitual offender to life in the custody of the Mississippi Department of Corrections. Evans appeals, arguing that the trial court erroneously granted the State's motion to amend the indictment to charge Evans as a habitual offender and that the trial court erred in refusing a cautionary jury instruction proffered by Evans. Evans also challenges the weight and sufficiency of the evidence.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Just before midnight on May 25, 2004, three masked men entered the Dixie Pak-A-Sak convenience store on Highway 19 in Meridian, Mississippi. The men's faces were covered with bandannas. One man wielded a silver pistol but the others were unarmed.
¶ 4. The cashier on duty was Billy Fain, who was counting cigarettes when the men arrived. Fain testified that the man with the gun pointed it at him and stated "All right, you smart-mouth m_____f_____, what you got smart to say now?" Fain told the men they were stupid. Then the man approached Fain, stuck the gun in his stomach, and threatened to kill him. The man ordered Fain to get on the floor, which he did, but then ordered him to get back up and to open the cash register. Fain complied. The man with the gun took between $175 and $185 out of the register. The man asked Fain for the store's money bag and Fain said that all the store's extra money was in a metal safe. The man demanded that Fain open the safe, but Fain said the safe was on a timer and he could not open it. The man pointed the gun at Fain and fired a shot that missed him and went through the window. Then, the man hit Fain in the head with the pistol. After Fain convinced the three robbers that he lacked access to any more money, they took some cigarettes and departed, heading around the left side of the store. Fain called 911. At the trial, Fain was unable to identify the man with the gun but described him as African-American, muscular, about six feet three inches tall, and about 175 to 185 pounds. This general description matched Evans.
¶ 5. Officer Kevin Boyd with the Meridian Police Department testified that he responded to the robbery call at 11:48 p.m. Upon arriving, he secured the scene and observed a bullet hole through the window and the cashier in an "obvious upset state." He recovered one projectile shell casing from behind a cigarette display. He also recovered a projectile outside that was lodged in the fuel pump's access panel. Police also recovered a videotape depicting the robbery but the participants' masks prevented their identification from the videotape.
¶ 6. Antonio Houston and Samon Powell testified on behalf of the State that they had participated in the robbery and both identified Evans in court as the gunman. Houston testified that Evans and Powell picked him up from an apartment complex in Neshoba County on the afternoon of May 25, 2004. Evans was driving a black Saturn vehicle. The three drove to Meridian, Mississippi. On the way, Evans *433 brought up the idea of robbing a store. Powell agreed they should do it. Houston testified that they stopped at the Dixie Pak-A-Sak and donned bandannas. Houston testified that Evans took the gun and led them into the store. Houston said Evans demanded that the clerk open the cash register and the clerk complied. Houston denied that Evans had a verbal exchange with the clerk. Houston testified that he personally removed the money from the cash register. Houston stated that the clerk was unable to open the safe because it was on a timer. Houston related that Evans fired one shot and struck the clerk with the gun. Houston said the three returned to Neshoba County after the robbery. Houston admitted that he had agreed to testify at Evans's trial on behalf of the State in exchange for a plea recommendation. He further admitted that, in an initial statement to the police, he had denied any responsibility for the robbery.
¶ 7. Samon Powell testified he and Evans met Houston at a Wal-Mart in Neshoba County where the three stole bandannas. Powell stated that Houston left. Later, Evans and Powell picked up Houston at the apartment complex. They drove around Neshoba County evaluating stores to potentially rob but did not find one. Evans drove them to Meridian. They stopped at the Dixie Pak-A-Sak because no one was in the parking lot. They parked on one side of the store and went inside. Evans pointed the gun at the clerk and demanded he open the cash register. The clerk opened the register. Powell stated that Houston removed the register's drawer and Evans took the cash from the drawer. Evans fired a shot and told the cashier to get down or he would shoot him. Then, they departed. Powell said he took a pack of cigarettes before leaving. Powell admitted that he had promised to testify at Evans's trial in exchange for a plea recommendation from the State. Powell also acknowledged his initial statement to the police, in which he admitted participation in the robbery but claimed Evans had forced him to participate by threatening him and his son. Powell maintained that his initial statement to the police was truthful.
¶ 8. Paul McShepard testified that he talked to Evans and Houston at the apartment complex in Philadelphia around June 30, 2004. McShepard was sitting on some steps and Evans and Houston were standing. Houston told McShepard that he and Evans had robbed a store off Highway 19 in Meridian. Houston said a window was shot out and they took money. During the conversation, Evans never contradicted what Houston told McShepard about the robbery. McShepard admitted that he had pending charges in Kemper County and was testifying pursuant to a plea deal.
¶ 9. After the trial on August 10-11, 2005, the jury found Evans guilty of armed robbery. At a separate hearing on August 22, 2005, the court sentenced Evans as a habitual offender to life without the possibility of parole.

LAW AND ANALYSIS
I. DID THE COURT ERR IN GRANTING THE STATE'S MOTION TO AMEND THE INDICTMENT TO ALLOW THE DEFENDANT TO BE CHARGED AS A HABITUAL OFFENDER?
¶ 10. The record reflects that Evans, Houston, and Powell were indicted for armed robbery and the lesser offense of robbery on November 19, 2004. On February 2, 2005, Evans's trial was continued due to plea negotiations. The trial was continued again on April 11, 2005 and on June 1, 2005. On April 19, 2005, the State moved to amend the indictment to charge *434 Evans as a habitual offender pursuant to Mississippi Code Annotated section 99-19-83 (Rev.2000). The State attached a list of several of Evans's prior felony convictions that it intended to use to establish his habitual offender status. The motion stated in bold lettering that the State was seeking a life sentence without the possibility of parole or probation.
¶ 11. On May 24, 2005, the court entered an order granting the motion to amend the indictment to charge Evans as a habitual offender under section 99-19-83. Rule 7.09 of the Uniform Rules of Circuit and County Court provides:
All indictments may be amended as to form but not as to the substance of the offense charged. Indictments may also be amended to charge the defendant as an habitual offender or to elevate the level of the offense where the offense is one which is subject to enhanced punishment for subsequent offenses and the amendment is to assert prior offenses justifying such enhancement (e.g., driving under the influence, Miss.Code Ann. § 63-11-30). Amendment shall be allowed only if the defendant is afforded a fair opportunity to present a defense and is not unfairly surprised.
Through new appellate counsel, Evans argues that the trial court erred by amending the indictment because no motion hearing was held and he lacked notice during plea negotiations of the State's intent to seek amendment.
¶ 12. Evans cites Forkner v. State, 902 So.2d 615 (Miss.Ct.App.2004) in support of his argument. However, Forkner dealt with a motion by the State on the day of trial to amend the indictment to charge the defendant as a habitual offender. Id. at 623(¶ 27). This Court held that the amendment was permissible because both defense counsel and Forkner had been aware during plea negotiations of the State's intention to amend the indictment. Id. at 624(¶ 28).
¶ 13. In this case, the record shows that the State served Evans's defense counsel on April 19, 2005, with notice of the motion to amend and with notice that the motion hearing was set for May 24, 2005. Thus, the record shows that well before Evans's August 2005 trial he was served with notice of the State's motion to amend the indictment to charge him as a habitual offender. And, contrary to Evans's assertion through new appellate counsel, the record shows a hearing date was set. The trial court entered the order amending the indictment on the day set for the hearing. There is no indication in the record that Evans was unfairly surprised or prejudiced by the amendment. Therefore, Evans has shown no error in amending the indictment.
II. THE TRIAL COURT ERRED IN REFUSING TO GIVE DEFENSE CAUTIONARY INSTRUCTION D-1.
¶ 14. Evans complains of the trial court's denial of his proffered jury instruction D-1 cautioning the jury about accomplice testimony. The instruction stated:
The Court instructs the jury that the law looks with suspicion and distrust on the testimony of an alleged accomplice, and requires the jury to weigh same with great care, caution and suspicion. You should weigh the testimony from alleged accomplices, and passing on what weight, if any, you should give the testimony, you should weigh it with great care and caution, and look upon it with distrust and suspicion.
The granting of a cautionary instruction concerning accomplice testimony is within the discretion of the trial court. Brown v. State, 890 So.2d 901, 910(¶ 22) (Miss.2004). *435 This Court determines whether the trial court abused its discretion using a two-part test. Id. We inquire first whether the witness was, in fact, an accomplice. Id. Next, we determine if the witness testimony was without corroboration. Id.
¶ 15. At the charge conference, the trial court recognized that both Houston and Powell were accomplices. The State argued that no instruction was required because the testimony of Houston and Powell was corroborated by each other's testimony, by Fain's testimony, by the videotape, and by the condition of the crime scene. Evans contended that the cautionary instruction was warranted because the only evidence identifying him as the gunman was provided by accomplices Houston and Powell. The trial court found that McShepard's testimony about Evans's silence when Houston accused him of actively participating in the robbery corroborated the accomplice's identification of Evans as the gunman. The court reminded defense counsel that he could argue to the jury that the accomplices' testimony was not credible due to their plea deals or other factors.
¶ 16. The trial court's ruling evinces that no abuse of discretion occurred in the denial of the cautionary instruction. The testimony of Houston and Powell was substantially corroborated by the videotape and condition of the crime scene, Fain's testimony, and each other's testimony. Evans argues that the testimony of Houston and Powell was "filled with inconsistencies" and was also inconsistent with their prior statements to the police. While there were some conflicts between the testimony of Houston and Powell, their testimony did not differ in material particulars, and the testimony of Powell did not differ from his prior statement to police in any significant manner. See Bell v. State, 725 So.2d 836, 848(¶ 27) (Miss.1998). All of the inconsistencies were fully presented to the jury in the trial testimony. The trial court recognized that Houston and Powell's identification of Evans as the gunman did have corroboration in Evans's silence during Houston's conversation with McShepard. The testimony of the accomplices was not without corroboration and we find that the trial court did not abuse its discretion in denying the accomplice cautionary instruction.
III. DID THE COURT ERR IN NOT GRANTING DEFENDANT'S MOTION FOR A DIRECTED VERDICT AND MOTION FOR A NEW TRIAL AND/OR JUDGMENT NOTWITHSTANDING THE VERDICT AS THE GUILTY VERDICT WAS NOT SUPPORTED BY THE EVIDENCE?
¶ 17. Evans argues that the trial court erred by denying his motion for a JNOV or a new trial. A motion for a JNOV attacks the sufficiency of the evidence. On review of the denial of a motion for a JNOV, this Court asks whether, considering the evidence in the light most favorable to the State, any rational jury could have found the essential elements of the crime beyond a reasonable doubt. Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The evidence will be found sufficient if a reasonable jury, applying the beyond a reasonable doubt standard, might reach different conclusions on each element of the offense. Id. We are mindful that "[m]atters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury." Harveston v. State, 493 So.2d 365, 370 (Miss.1986).
¶ 18. Mississippi Code Annotated section 97-3-79 (Rev.2006) provides the *436 elements of armed robbery. That section states: "Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery. . . ." Accordingly, the jury was instructed to find Evans guilty of armed robbery if it found beyond a reasonable doubt that Evans "did wilfully and unlawfully take the personal property of Dixie gas station, from the person or presence and against the will of Billy Fain, by putting him in fear of bodily injury," among other elements. Evans argues that the State provided insufficient proof of all of the essential elements of the crime. Specifically, Evans argues that there was insufficient evidence that Evans placed Fain in fear of immediate injury to his person. Evans points out that, while Fain testified that he was nervous during the robbery, he expressly denied having been in fear.
¶ 19. The crime of robbery has three essential elements: "(1) felonious intent, (2) force or putting in fear as a means of effectuating the intent, and (3) by that means taking and carrying away the property of another from his person or in his presence." Crocker v. State, 272 So.2d 664, 665 (Miss.1973). When putting in fear is relied upon as the proof of the charge, "it must be the fear under duress of which the owner parts with possession." Id. The fear element does not require the victim to be frightened or terrified, but is fulfilled if the victim expects or anticipates that personal injury may result if he does not follow the assailant's instructions made while threatening the use of a deadly weapon. Harper v. State, 434 So.2d 1367, 1368 (Miss.1983).
¶ 20. While Fain never testified that he was afraid or "in fear," there was sufficient evidence to enable a rational jury to find beyond a reasonable doubt that Fain anticipated that personal injury would result if he did not follow Evans's instructions. As the State points out, Fain acknowledged that during the robbery he was nervous and worried about how his friends and relatives would fare without him. Powell testified that, after the shot was fired, Fain prayed for forgiveness for his sins. And, Fain behaved compliantly when threatened with the gun. From this evidence, the jury reasonably could infer that Fain anticipated being injured and was acting under duress. There was sufficient evidence supporting Evans's conviction of armed robbery.
¶ 21. The weight of the evidence is challenged by a motion for a new trial. On review of the denial of a motion for a new trial, we view the evidence in the light most favorable to the verdict, and determine whether the evidence so heavily preponderated against the verdict that an unconscionable injustice would result from the denial of a new trial. Bush, 895 So.2d at 844(¶ 18). The power to grant a new trial should be exercised only in exceptional cases. Id. In this case, there was detailed evidence from several sources establishing that three masked men effectuated a robbery of the Dixie Pak-A-Sak by threatening the cashier with a gun. Evans was identified as the gunman by his two accomplices. His general description was consistent with the description of the gunman given by the cashier. The evidence did not preponderate so heavily against the verdict that an unconscionable injustice would result without a new trial. This assignment of error is without merit.
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF *437 ARMED ROBBERY AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. ROBERTS, J., NOT PARTICIPATING.