# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00222-COA

**JARVIS BROWN**                                                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/27/2016 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | AZKI SHAH |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/04/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE GRIFFIS, P.J., BARNES AND GREENLEE, JJ.

### BARNES, J., FOR THE COURT:

¶1. Jarvis Brown was convicted of attempted aggravated assault with a firearm and sentenced to ten years in the custody of the Mississippi Department of Corrections (MDOC), with five years suspended, and five years of post-release supervision. He was also sentenced to an additional five years for using a firearm in the commission of the crime, to be served consecutively to the sentence for the assault offense. *See* Miss. Code Ann. § 97-37-37 (Rev. 2014). After the Coahoma County Circuit Court denied his posttrial motion, he appealed, arguing that the sufficiency and weight of the evidence do not support the verdict. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. At approximately 8:00 p.m. on October 11, 2013, Daniell Hampton left his local barber shop in Clarksdale, Mississippi headed for home. He observed a dark-colored Chevrolet Tahoe tailing his car and recognized Brown as the driver. Hampton heard gunshots and noticed his back window was shattered; so he drove to his mother's home nearby and notified the Clarksdale Police Department of the shooting. He then took his vehicle to the police station for processing. A few hours later, Brown was taken into custody in connection with the shooting. Hampton later identified Brown from a photo lineup.

¶3. Brown was indicted for attempted aggravated assault in violation of Mississippi Code Annotated section 97-3-7(2)(a) (Rev. 2006). A jury trial was held in Coahoma County Circuit Court on July 13, 2016. Officer Jamie Stribling testified that the police department had received a "shots fired" call at 8:08 p.m. from an unnamed source before Hampton contacted them and were already in route to the area. Two 9-millimeter shell casings were recovered near where Hampton said the shooting occurred; however, no gun was ever found. Officer Stribling conducted a gunshot residue (GSR) test on Brown within a few hours of the shooting and sent the samples to the Mississippi Crime Lab. Chad Suggs, a forensic scientist, testified the GSR analysis showed that particles indicative of GSR were found on Brown's hands. Hampton testified that he had known Brown for "[o]ver twelve years," and identified him as the driver of the vehicle from which the shots were fired. Hampton also said that when his back windshield shattered, he looked into his rearview mirror and saw

"flames coming from the driver's side by the mirror."

¶4. After the State rested, defense counsel moved for a directed verdict, which the circuit court denied. Brown's girlfriend, Aldemetrise Thomas, testified for the defense. She claimed Brown had gone with her to Tupelo on the day of the shooting and that they did not return to Clarksdale until right before 10:00 p.m., thereby providing Brown with an alibi. However, on cross-examination, Thomas admitted she never told police officers that she was with Brown that evening; she said she only told Brown's attorney.

¶5. Brown was found guilty and sentenced to ten years in the custody of the MDOC, with five years suspended, and five years of post-release supervision. He was also sentenced to five years in MDOC custody for using a firearm in the commission of his crime. Brown filed a motion for judgment of acquittal, or in the alternative, for a new trial, which the circuit court denied. On appeal, Brown contends that the sufficiency and weight of the evidence do not support the verdict; therefore, the circuit court erred in denying his motion.

## DISCUSSION

¶6. "When reviewing the sufficiency of the evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Topps v. State*, 227 So. 3d 1177, 1180 (¶5) (Miss. Ct. App. 2017) (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (overruled on other grounds by *Little v. State*, 233 So. 3d 288, 292 (¶20) (Miss. 2017))).

3

¶7. Brown was charged with attempted aggravated assault under section 97-3-7(2)(a), which provided in part: "A person is guilty of aggravated assault if he . . . attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]" Brown specifically contends that the "identity of the perpetrator is an essential element of attempted aggravated assault, and the State failed to prove that he was the driver of the automobile in question on October 11." He notes that no gun was recovered; nor did the police ever locate the vehicle identified by Hampton. Brown also argues that Hampton did not initially identify Brown as the shooter when he called police and that Hampton kept changing his testimony at trial regarding the identification of Brown, specifically as to the time he saw him. On direct examination, Hampton testified that he did not realize Brown was the driver of the Tahoe until he got "past the bus station." Brown asserts:

> [A]ccording to Hampton (the victim), he had traveled pas[t] the bus station before he was able to ascertain the identity of the driver of the SUV as [Brown], and this was accomplished through the glare of the SUV headlights—which is an impossibility. And after being confronted with said impossibility, Hampton changed his testimony.

On cross-examination, Hampton stated that he saw Brown stopped at an intersection right after Hampton had left the barber shop. When confronted with the inconsistency in his testimony, Hampton explained that although he had seen Brown at the light, he did not realize Brown was the driver of the vehicle tailing him until after the shots were fired:

> A.  I tried to identify the driver . . . . I knew who the driver was because we actually both met at the Ranchero intersection. Well, I made it there

4

first. As I was pulling off, he pulled up. And, of course, you look both ways before you leave an intersection at a stop sign. And when I looked to my right, I saw him, but, like, I never knew that he was fixing to get behind me. But he did.

. . . .

Q.     Which one is the truth, Mr. Hampton? Or neither one is the truth?

A.     Both. I mean, I met [Brown] at the intersection, and I saw him and I knew the vehicle that he was in. Once I passed, I didn't know that that was him in that vehicle behind me, trailing like that, until he got close on my bumper. And once he got close on my bumper . . . and I looked in my rear-view mirror, I noticed him. . . . I mean, I would not "not" notice someone that I've been knowing for over twelve or thirteen years.

¶8.     Regardless of any inconsistencies as to when Hampton identified Brown as the shooter, Hampton testified that he had known Brown for several years, and he was "a hundred percent positive it was [Brown]" who was driving the car. Hampton also said that he gave a statement to police later that evening and identified Brown as the person who shot at him. Police interviewed Brown, and a GSR test was conducted of Brown's hands. Particles indicative of GSR were found on Brown's hands. Shell casings and photos of Hampton's vehicle were admitted into evidence, showing glass from the back windshield all over the back seat of the car and a hole in his front windshield. Therefore, we find the evidence was sufficient to support the verdict.

¶9.     "A challenge to the weight of the evidence is separate and distinct from a challenge to the legal sufficiency of the evidence," in that it seeks a new trial. *Bradford v. State*, 102 So. 3d 312, 316 (¶16) (Miss. Ct. App. 2012) (quoting *Thomas v. State*, 48 So. 3d 460, 469

5

(¶20) (Miss. 2010)). A verdict will not be disturbed on appeal "unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id*. Evidence is viewed "in the light most favorable to the verdict." *Id*.

¶10. As already discussed, Hampton unequivocally identified Brown as the driver of the vehicle that was following him and from which the shots originated. Suggs, the forensic scientist, testified that he found particles indicative of GSR on the samples taken from Brown's hands. Admittedly, Brown's alibi witness, Thomas, testified that Brown was not in Clarksdale at the time of the shooting but was driving back from Tupelo with her. It is the jury's responsibility, however, to weigh and consider conflicting evidence, evaluate the witnesses' credibility, and determine whose testimony should be believed. *Conner v. State*, 45 So. 3d 300, 304 (¶16) (Miss. Ct. App. 2010) (citing *Ford v. State*, 737 So. 2d 424, 425 (¶8) (Miss. Ct. App. 1999)). The jury evidently did not find Thomas's testimony credible. Viewing the evidence in the light most favorable to the verdict, we find the weight of the evidence supported the jury's finding that Brown was guilty of attempted aggravated assault.

¶11. Accordingly, the circuit court's denial of Brown's posttrial motion was not in error, and we affirm the judgment.

¶12. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**