# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00815-COA

**JASON FOY CRUTCHFIELD A/K/A JASON CRUTCHFIELD**        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/09/2022 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/10/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McCARTY AND SMITH, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1. A dispute boiled over into a fight between two men. Beaten and embarrassed, one man left and obtained a handgun. He returned to the scene of the fight and shot the other man to death. As a result, he was found guilty of first-degree murder and possession of a firearm by a felon. He raises sufficiency and weight issues on appeal. Finding no error, we affirm.

## BACKGROUND

¶2. Jonathan Morgan shared an apartment with his girlfriend Kaitlyn Liuzza. One day Jason Crutchfield rode his bicycle to the apartment looking for Morgan. Liuzza told

Crutchfield that Morgan was not at home. Liuzza then "shooed" Crutchfield down the apartment stairs. Crutchfield called Liuzza a b***h and "threw his bike" at her. Morgan came out of the apartment and fought with Crutchfield.

¶3. After Morgan "jumped on" him, Crutchfield left on his bike, holding his side. He then rode approximately a mile away where he and his girlfriend were camping. At the camp, he retrieved a handgun. His girlfriend tried to stop him from returning to Morgan's apartment with the gun but was unsuccessful.

¶4. Meanwhile, Morgan and his girlfriend went back into the apartment and began watching television. Liuzza spotted Crutchfield through the window. Morgan then opened the bedroom window and yelled at Crutchfield, "[Y]ou want some more?"

¶5. Crutchfield then aimed the handgun in the direction of the window and "just started shooting." Crutchfield later told the police he recalled shooting at Morgan three times "because [he] only had three bullets." Morgan was shot once in his chest, puncturing his heart and lung, which subsequently killed him.

¶6. The day after the shooting, Crutchfield was identified as the suspect. He was arrested and interviewed. In the recorded interview, Crutchfield admitted he shot Morgan and then hid the handgun in a rotting tree.

**PROCEDURAL HISTORY**

¶7. Crutchfield was indicted for first-degree murder and as a felon in possession of a firearm. At trial, the recorded interview of the police and Crutchfield was admitted into evidence and played for the jury.

2

¶8.     Following a jury trial, Crutchfield was convicted and sentenced as a nonviolent habitual offender to life for murder (Count I) and ten years for possession of a firearm by a felon (Count II).  The trial court ordered the sentences to be served concurrently as a nonviolent habitual offender, and also to pay fines totaling at least $30,000. Crutchfield moved for judgment notwithstanding the verdict or, in the alternative, a new trial.  The trial court denied the motion.  Crutchfield now appeals.

## DISCUSSION

### I.     Sufficient evidence supported Crutchfield's first-degree murder conviction.

¶9.     Crutchfield contends there was insufficient evidence to support his first-degree murder conviction.[1]  Specifically, he argues that the requisite element of premeditation or deliberate design for a first-degree murder conviction was not proved.  He claims that at most the State proved a lesser crime, such as second-degree murder or manslaughter.

¶10.    "When we address a challenge to the sufficiency of the evidence, the question is not whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *McCarty v. State*, 247 So. 3d 260, 268 (¶23) (Miss. Ct. App. 2017).

---

[1] While Crutchfield mixes his arguments about sufficiency and weight into one issue, "[a] challenge to the weight of the evidence is separate and distinct from a challenge to the legal sufficiency of the evidence." *Brown v. State*, 269 So. 3d 1262, 1264 (¶9) (Miss. Ct. App. 2018).

¶11. First-degree murder is defined as "the killing of a human being . . . [w]hen done with deliberate design to effect the death of the person killed, or of any human being[.]" Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2020). "[D]eliberate indicates a full awareness of what one is doing and generally implies careful and unhurried consideration of the consequences." *Wilson v. State*, 936 So. 2d 357, 364 (¶17) (Miss. 2006). "Design means to calculate, plan or contemplate." *Id*. "However, deliberate design to kill a person may be formed quickly and perhaps only moments before the act." *Id*.

¶12. In *Wilson*, police had been repeatedly called to a home where a man lived with his girlfriend and her two children. *Id*. at 360 (¶2). The undisputed proof showed that after the police had removed him from the apartment, he returned late at night and then "became angry, broke the glass of the door with his fist, unlocked it, entered the home and started punching [the victim] in the face." *Id.* at (¶3). He then "grabbed a knife from the nearby counter, stabbed her fourteen times, and inflicted eleven slash wounds and one chop wound," after which the woman died. *Id*.

¶13. On appeal, Wilson claimed there was insufficient evidence to support his conviction for deliberate-design murder. *Id*. at 363-64 (¶¶15-16). The Supreme Court rejected his argument, finding the proof was undisputed that he returned to the apartment after a fight, obtained a weapon, confronted the victim, and then killed her. *Id*. "This evidence points directly to a considered plan, deliberately executed, with the purpose of killing [the victim]." *Id*.

¶14. Like in *Wilson*, the proof in this case showed the defendant left the apartment after

4

a fight with the victim, obtained a handgun, rode his bike a mile back to the building, pointed the gun at the victim, and then pulled the trigger until he ran out of bullets. This was undisputed evidence of a "considered plan," just as in *Wilson*. *Id*. at 364 (¶16). Indeed, the jury watched the recording of Crutchfield admitting to the police he shot at the victim.

¶15. Given this evidence, any rational jury could have "found the essential elements of the crime beyond a reasonable doubt." *McCarty*, 247 So. 3d at 268 (¶23). Further, a rational juror could have determined that Crutchfield had "full awareness what he was doing was wrong" and that when his girlfriend attempted to stop him from going back to the apartment, "the consideration of consequences" was apparent but ignored. The proof showed Crutchfield had calculated and planned to kill Morgan, as shown by his traveling to get the handgun. Either of these rational conclusions could satisfy the elements required to convict Crutchfield of first-degree murder.

¶16. Furthermore, while Crutchfield argues that at most the State proved second-degree murder or manslaughter, that was a question for the jury. The jury was given instructions on first-degree murder, second-degree murder, and manslaughter.

¶17. We find there was sufficient evidence to support the conviction.

**II.      The verdict was not against the weight of the evidence.**

¶18. Crutchfield alternatively argues that his murder conviction is against the overwhelming weight of the evidence. Specifically, he contends his first-degree murder conviction constitutes manifest injustice and warrants a new trial.

¶19. "When reviewing a denial of a motion for a new trial based on an objection to the

5

weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *McCarty*, 247 So. 3d at 268 (¶24). "The evidence must be viewed in the light most favorable to the verdict," and we must affirm unless "the trial court abused its discretion in denying a new trial." *Id*.

¶20. During the trial, the jury watched the recorded interview of Crutchfield's admission of shooting Morgan. Crutchfield stated that after fighting with Morgan he left to go get his gun. He explained that he returned to Morgan's apartment with the loaded handgun and opened fire once Morgan asked if he "want[ed] some more."

¶21. It was in the power of the jury to determine the evidence was credible, and that is what the jury did in this case. The verdict was not against the weight of the evidence.

## CONCLUSION

¶22. We find that there was sufficient evidence to support Crutchfield's first-degree murder conviction. Secondly, we find the verdict was not against the weight of the evidence.

¶23. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR.**

6